STATE EX REL COOK, Plaintiff-Appellee, v TURGEON, ETC. ET, Defendants-Appellants.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20681. Decided November 24, 1947.

Pennell, Carlson & Rees, Cleveland, for plaintiff-appellee.
Emery C. Smith, Cleveland, for defendants-appellants.

### OPINION

By HURD, PJ.

This is an action for writ of mandamus to require the Building Commissioner of the City of Rocky River to issue a permit for the construction of a business structure at the northwest corner of Detroit and Erie Roads, Rocky River, Ohio.

The relator purchased the real estate in question on December 9, 1943, and on the same day applied for and was granted a permit to construct a two-story commercial building with two stores on the ground floor and living suites above, under the provisions of a then existing city ordinance (No. 3213, effective from the year 1930) which classified relator's premises as "Class D Business District."

However, he did not commence work of building within a period of six months from the date of the issuance of the permit, and thereafter on June 22, 1944, the permit was revoked by the Mayor of the City, which he was authorized to do by virtue of the provisions of an ordinance which in part reads as follows:

"After permit has been issued, same may be revoked if work for which such permit was issued is not commenced within six months from issue."

(Section 'Y' of City Ordinance No. 1791)

Thereafter, about one year later, on June 2, 1945, the relator filed a second application for a permit identical in form and substance to his first application. This second application was refused by the Building Commissioner because at that time the city was operating under a new zoning ordinance (No. 931 effective from May 2, 1944) which by its terms rezoned the premises in question changing the classification from busi-

ness to two-family or multiple residence (apartment house) use. The particular provisions of the new ordinance affecting the property of the relator are as follows:

"(a)    That the north side of Detroit, Road from the westerly line of Parsons Court, west to the City Limits be and the same is hereby changed from Class 'D' Business District to Class 'B' Two-family Residence District and Class 'C' Residence District Multiple.

(b)    That the South side of Detroit Road, from the westerly line of Rockland Avenue, west to the city limits, be and the same is hereby changed from Class 'D' Business District to Class 'B' Two-Family Residence District and Class 'C' Residence District Multiple."

The action of the Building Commissioner in refusing the second application was later affirmed by the city Board of Zoning Appeals on June 22, 1945. Thereafter, on June 6, 1945, a petition for writ of mandamus was filed in the common pleas court of Cuyahoga County and this appeal is on questions of law from a judgment allowing the writ. While there are six assignments of error, the principal ones are:

"2.    The finding and order of the Court are contrary to law.

5.    The decree was given for the appellee when it should have been given for appellants."

An examination of the record and exhibits, including drawings, photographs and maps, discloses that while the Detroit Road frontage of this allotment known as Beach Cliff Subdivision No. 3, from 1930 to May 2, 1944 was zoned for business property, none of said frontage has been so used or so developed. In fact, all of the land fronting on Detroit Road within the allotment including the property of relator is heavily wooded and is unimproved, as appears from the photographs in evidence.

The land on the north side of Detroit Road to the west of relator's property is vacant for a considerable distance extending to Wagar Road. To the east of relator's property on the northeast corner of the intersection of Detroit and Erie Roads is Beach Public Elementary School and the Rocky River Board of Education buildings. The development on the north side of Detroit Road, east of the school buildings, is residential in character to Lakeview Road, the next street east, with the exception of a confectionary store next to the school buildings,

a storage building in the rear of one of the occupied residences, and an upholstering business carried on by the occupant of another residence.

On the south side of Detroit Road to the west of relator's property the development is residential with the exception of an old store at the corner of Northview Road which was there many years prior to the establishment of any zoning ordinances.

Likewise, the development on the south side of Detroit Road to the east of relator's property is residential with the exception of a combined greenhouse and floral shop located diagonally across from the property of relator.

The parties stipulated that both Detroit and Erie Roads are highly travelled streets and that Erie Road is the only easterly entrance from Detroit Road to the Beechwood Allotment No. 2, which comprises several hundred homes between Detroit and Westlake Road. It was also stipulated that the City of Rocky River is a compartively small municipality of approximately 9000 population and improved for the most part by attractive single homes of the average valuation of $8,000.00 or more; that traversing said municipality in an east and west direction are the main thoroughfares, West Lake Road, Detroit Road, Hilliard Road and Center Ridge Road, all of which with the exception of Hilliard Road are main interstate highways; that Wooster Road is also a main highway, extending north and south through the easterly portion of the said city; that all of said main highways are traversed by an endless flow of traffic each day; that said east and west highways extend through the entire city from its east and west boundaries; that all of said highways under the original zoning ordinance No. 3215, passed in the year 1930, with the exception of approximately two miles on West Lake Road, were zoned for retail business; that in addition thereto, Westwood Avenue also traversing the city from east to west practically its entire width, was also zoned for retail business, as well as Blount Street (the main street extending from the Detroit Avenue Bridge north to West Lake Road) and in addition portions of various side streets.

The principal business district of Rocky River is located about one-half mile east of relator's property commencing generally with the intersection of Blount Street on the west side of the Rocky River Bridge and extending west on Detroit Road to Prospect Avenue. At the point of the intersection of Erie and Detroit Roads there is an ascending grade on Detroit Road passing to the west of relator's property and a descending grade on Erie Road running north from Detroit

Road. Erie Road is a narrow street and Detroit Road at this point is a comparatively narrow street for a main intersectional highway.

The record clearly shows that Ordinance No. 931 changing the classification of relator's property from business to multiple residence property was in the nature of a stop-gap Ordinance which changed the zoning classification of all of the unimproved portions of the business frontage of the city with certain unimportant exceptions; that the Ordinance was passed in order to give the city the time and opportunity to prepare and adopt a more suitable plan of zoning development of the city and that the city council with the approval of the City Planning Commission had employed a zoning expert to accomplish this purpose.

The witnesses for respondents were quite emphatic in their testimony to the effect that a definite traffic hazard would be added by a business development at this intersection, by reason of the close proximity of the public school buildings, the narrowness of the streets and the street grades above indicated.

Included among the witnesses, testifying to the traffic hazards on behalf of the city, were the Superintendent of Schools, the Police Chief, the Mayor, and the Chairman of the Council Zoning Committee. Two of relator's expert witnesses on cross-examination admitted that the business use of this property might cause a traffic hazard.

The record discloses extensive testimony with respect to the issuance of the first permit in 1943 and its revocation in June, 1944. The record also indicates that the trial court gave considerable attention to this evidence, and apparently attached considerable importance to it, judging by the remarks contained in the record and the oral opinion at the conclusion of the evidence.

We think the question of the issuance and revocation of the first permit was not an issue in this case; that the power of revocation was properly exercised under Section 'Y' of Municipal Ordinance No. 1791, the pertinent part of which we have quoted. Likewise, it has been held in such cases that the relator does not acquire a property right in the permit.[1] It appears further that relator himself recognized

1. See: *State ex rel v Rendigs, 98 Oh St 251.*
See also: *Cahn v Guion, Bldg. Comm. 27 Oh Ap 141.* At *page 145* speaking through Vickery, J., the court said:
"As already stated, the building inspector, upon the passage of this ordinance, and its going into effect, revoked these building permits and it is to that action that these proceedings are brought. It is argued strenuously by plaintiff in this action that

the legal lapse of the first permit and the authority of the city to revoke the same, because this action in mandamus is predicated upon the refusal of the city to grant the second application made in 1945.

The first authoritative decision on the question of zoning arose in this county in a case which was ultimately decided by the Supreme Court of the United States.[2] It was there held, inter alia, that whether the power exists to forbid the erection of a building of a particular kind or for particular use is to be determined not by an abstract consideration of the building, considered apart, but by considering it in connection with the circumstances and the locality. The same case also held that all zoning laws and regulations must find their justification in some aspect of the police power asserted for the public welfare and that the line which in this field separates the legitimate from the illegimate assumption of power is not capable of precise delineation. This means then that each case must be determined by the facts, circumstances and conditions surrounding it.

The general rule to be applied in all cases is well stated in 42 O. Jur. 812, paragraph 13, where the following appears:

"* * * But it may be stated as a well-settled general rule that before the court will declare a zoning ordinance invalid, **it must clearly appear that it has no substantial relation to the public health, safety or morals, or to the general welfare.** The converse of this proposition is equally true, and a zoning ordinance will be declared invalid where it has no relation to public health, safety or morals, or to the general welfare. Thus, the inclusion of private land in a residential district under a zoning ordinance, with the resulting inhibition of its use for business and industrial buildings, to the serious damage of the owner, violates the Fourteenth Amendment of the United States Constitution, **if the health, safety, convenience or general welfare of the part of the city affected will not be promoted thereby.**" (emphasis added)

these permits gave a certain property right that could not be divested by an action of the building inspector nor by the city council itself, because it is argued that they are within the inhibition of the Constitution of the United States which provides that no retroactive law shall be passed, nor any law impairing the obligation of a contract. There would be some strength in this argument, if it had not been wholly disposed of by the Supreme Court in the case of *State ex rel Ohio Hair Products Co. v Rendigs, Bldg. Comm. 98 Oh St 251, 120 N. E. 836,* in which the Supreme Court absolutely disposed of this contention."

2. See Village of Euclid v Ambler Realty Company 272 U. S. 365; 71 L. 303; 47 S. C. 114; 54 A. L. R. 1060.

By the great weight of authority also, it is a general rule that courts will not substitute their judgment for that of the legislative board charged with the duty of determining the necessity and character of the regulation so that if the validity of the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control unless there is a clear abuse of legislative power or the ordinance is unreasonable.[3]

Another proposition to which we think we should call attention is the general rule of law that in a mandamus action "the facts submitted and proof produced must be plain, clear and convincing before the court is justified in using the strong arm of the law by way of granting writ of mandamus.[4] In other words, where the validity of a zoning ordinance is being tested by a proceeding in mandamus, the burden is upon the relator to show by clear and satisfactory evidence that the ordinance is, for some reason, invalid.[5]

The relator contends that the stop-gap ordinance No. 931 in its scope and effect was arbitrary and unjust, particularly because by its terms it eliminated all of the business frontage of the city of Rocky River with the exception of 7200 feet thereof, pending the enactment of a permanent zoning ordinance. It is claimed that this was done without regard as to whether or not the areas rezoned were already developed for business. The respondent offered to show the purpose and intent of the council to justify the adoption of the stop-gap ordinance, but the trial court declined to entertain the offer of such evidence on the ground that it was immaterial to the issues of the instant case insofar as the property of relator was concerned.

It is our opinion that the trial court did not err in its refusal to entertain evidence relating to the property other than that of the relator. Inasmuch as the validity of the ordinance is attacked by the relator, it must stand or fall with relation to its reasonableness or unreasonableness in respect of its application to relator's property. The fact that it is an emergency or stop-gap ordinance does not per se render it invalid. The validity of such ordinances has been frequently

3.   See *42 Oh Jur 815, Sec. 17* (Zoning & Zoning Laws).
4.   See *State ex rel v City of Lakewood, 41 Oh Ap 9 at page 19.*
See also, paragraph 3 of syllabus:
'Mandamus is granted only in a clear case.'
5.   See *42 Oh Jur 826, Sec. 36,* and State ex rel Morris v Osborn, 22 O. N. P. (n. s.) 549, 31 O. D. (N P) 197.

uphold in various jurisdiction.[6] With respect to the ordinance here attacked, the presumption is in favor of its validity and it is therefore incumbent upon the relator to show in the instant case that the action of the Council of Rocky River in the enactment of the ordinance in the exercise of the police power is clearly unreasonable and arbitrary.[7] Therefore, whether the ordinance was temporary in nature or permanent is immaterial. The real test is whether or not it was so clearly arbitrary and unreasonable as to have no substantial relation to the public health, safety, morals and general welfare. In considering this question the court should be "guided by the reasonable expectation and purpose as expressed in the ordinance or fairly to be inferred therefrom of the ordinary person who sits in council and enacts laws for the welfare of the general public.[8]

However, in our opinion the trial court erred in holding in effect that the zoning of this particular property for multiple residence (two family or apartment house) purposes was an arbitrary use of the police power unrelated to the public welfare, health, morals and safety.

As indicated in a discussion of the legal principle applicable it was not within the province of the court to substitute its judgment for that of the Council or of the Zoning Board of Appeals. This land insofar as any building development is concerned is virgin territory. If there had been any previous development of this property of any kind, the court might reasonably consider whether or not a change in its use was an arbitrary exercise of police power. However, in the state of the record here before us for review, we are impressed by the fact that relator's land and the adjoining frontage on Detroit Road included within the allotment is entirely undeveloped. The character of the surrounding property is largely rural, residential and truck farm land. It cannot reasonably be said that this property is within the business area of the city. On the contrary, it is definitely outside of the present well-developed area of the city.

Further, when we consider the testimony with respect to the possible traffic hazards involved, the close proximity of the public school and the other factors mentioned, can it be said

6. See: *42 Ohio Jur 809 Sec 8 and cases therein cited.* See also, Williams v Deer Park. *78 Oh Ap 231, 69 N. E. 536; 33 Oh Ap 371, 47 Abs 33.*
7. See: *State ex rel v Rendigs, 98 Oh St 251 at page 259.*
8. See: *Steudel, appellee v Trowbridge et al, 76 Oh Ap 136, Syl. 1.*

that the Council and the Zoning Board of Appeals acted in an arbitrary and unreasonable manner in respect to the zoning of this property for multiple residence purposes? We think not.

In conclusion, it is our view upon a careful examination of all the facts and surrounding circumstances, as disclosed by the record, that the exclusion of a business development from this particular area by a zoning ordinance in relation to the premises of the relator cannot be said to be so clearly arbitrary and unreasonable and to have no such substantial relation to the public health, safety, morals and general welfare, as not to be within the police power of the municipal authorities of Rocky River. It follows therefore that the judgment of the common pleas court in allowing the writ of mandamus is contrary to law and should be reversed.

For the reasons stated the judgment is reversed and final judgment is rendered for the appellants.

MORGAN and SKEEL, JJ, concur.