GEORGE SCHREIBER et al., Plaintiffs, *v.* TOWN OF CHEEKTOWAGA et al., Defendants.

Supreme Court, Erie County, August 15, 1949.

*Robert Boasberg* for plaintiffs.

*George B. Doyle* for defendants.

SAMUEL J. HARRIS, Official Referee. The plaintiffs have brought this action to enjoin the enforcement by the defendant town and its officers of a certain ordinance on the ground that such ordinance is in violation of the Constitution of the State of New York and of the Constitution of the United States in that it is arbitrary and unreasonable. The ordinance was adopted by the town board of the town on the 28th day of June, 1948, " In order to Regulate Sand Bank and Gravel Pits, Topsoil Removal and Other Excavations in the Town ". Authorization to adopt ordinances of this kind is to be found in section 136 of the Town Law which as amended reads as follows: " The town board may provide by ordinance for the licensing and otherwise regulating of * * * 12. In any town in the counties of Erie and Monroe, or in a county adjoining a city having a population of one million or more, or in any town adjacent to such a county, the operation and use of any lands or premises for the excavation of sand, gravel, stone or other minerals and the stripping of top soil therefrom." Section 1 of article I of the ordinance contains as a declaration of policy:— " It is hereby declared to be the policy of the Town Board to provide for the proper use of land to prevent all manner of excavations which create pits, holes, or hollows in the earth, leaving it in a hazardous or dangerous state, or cause soil erosion which depletes the land of its natural vegetative cover and supply of organic material, renders such land unproductive and unsuitable for agricultural purposes and undesirable for building homes, resulting in lower land values. By this ordinance the Town Board seeks to remove the danger to health and life caused by deep excavations remaining in the ground; and the stripping of topsoil thereby resulting in damage to agricultural crops through dust storms in dry weather, by exposure of the bare earth to wind action and in wet periods by pools of water, which ordinance will promote the safety, health and general welfare of the people of the Town."

The Town of Cheektowaga is situate in the county of Erie and lies east of the city of Buffalo, south of the town of Amherst,

north of the town of West Seneca and west of the town of Lancaster all of which towns are in Erie County. The Town of Cheektowaga was incorporated in March, 1939. It contains 29.23 square miles. Its population by the 1940 Federal census was 25,006 and the present estimate of such population is somewhat over 40,000. The Town of Cheektowaga, like the towns adjoining, includes within its territorial borders residential, industrial, agricultural and various other types of life that are now found in towns contiguous to large urban centers. A certain portion of the town in the northwest part thereof contains cemeteries; there are scattered throughout the town church establishments, parks and railroad yards. Partly on the east border of the town of Cheektowaga which separates it from West Seneca and partly through the town itself there runs Cayuga Creek the waters of which creek finally reach the Buffalo River and thus Niagara River. The lands in the vicinity of this creek are rich in topsoil consisting of so-called Genesee loam, a soil of great value in germination and growth of vegetable matter. In other parts of the town and largely the northerly part thereof are sand, gravel and stone formations; in past years such formations have been worked and quarried to a considerable depth. Such use of these formations has resulted in abandoned excavations and a dangerous situation. The topsoil formations of Genesee loam have for years been the subject of operations by concerns which stripped the land of such topsoil for the purpose of marketing the same in other vicinities both in and out the town of Cheektowaga where topsoil is not so rich. Among those who have been engaged in such occupation and are now so engaged are the present plaintiffs. At the time of the adoption of the ordinance in question the plaintiffs owned certain property in the town of Cheektowaga located adjoining Cayuga Creek and containing some sixteen acres. This property was purchased by the plaintiffs in February, 1947, for the sole purpose of stripping the topsoil for removal and sale. At the time of the adoption of the ordinance, June 28, 1948, the plaintiffs had stripped the soil to a depth of several feet from such premises except for some four acres thereof. At the same time a corporation known as the Buffalo Topsoil Corporation was stripping and selling topsoil from property on Rowley Road in the town of Cheektowaga. So soon as the ordinance was adopted the plaintiffs ceased working on their premises. Subsequent to the adoption of the ordinance and such cessation of work and prior to the 6th day of October, 1948, the members of the town

board made a further investigation and study of the properties of the Buffalo Topsoil Corporation and of the plaintiffs on which work had ceased by reason of the prohibition contained in the ordinance. After such study and investigation and on the 6th day of October, 1948, after publication of notices and a hearing the town board of the town of Cheektowaga by a majority vote adopted two resolutions which exempted the property on which the Buffalo Topsoil Corporation had been working at the time of the adoption of the ordinance and the premises on which the plaintiffs had been working at that time from the effect of the ordinance. As part of the resolution granting exemption to the Buffalo Topsoil Corporation on October 8, 1948, there is recited: " The majority of the Board has inspected said property and it has determined that this particular property is not subject to the provisions of the ordinance, since it is clear that the work that the petitioner has been doing and desires to do does not threaten to be detrimental to the public health, morals or safety of the general welfare in any respect * * * ''. Each piece of property was covered by separate resolutions and although the resolution reciting the exemption of the plaintiffs' property has no such preamble it is fair to conclude that it was the object of the majority of the board to adopt the resolution affecting the plaintiffs' property for the same reason as given in the adoption of the resolution in reference to the property of the Buffalo Topsoil Corporation as quoted above, and the adoption of the resolution of October 6, 1948. Immediately after the adoption of the resolutions on October 6, 1948, the plaintiffs resumed the removal of topsoil; and in the course of their business the plaintiffs made new contracts for the sale of such soil and in order to carry out the contracts purchased and put into use additional conveyances and machinery. By resolution on the 9th day of May, 1949, without any notice to the plaintiffs and without a hearing the board of the town rescinded the two resolutions of October 6, 1948, and served a notice of such rescission on the plaintiffs on the 10th day of May, 1949. At that time there was remaining unstripped of the original sixteen acres about an acre and a half of topsoil on the plaintiffs' premises. Consequent to such resolution and notice the plaintiffs have brought this action.

The ordinance adopted June 28, 1948, which is here being attacked among other things forbade stripping or removal of topsoil within ten feet of any property line and that after removal the stripped premises " shall be graded to the level

of the abutting highway or the original grade if the same were below the level of the highway." Further the ordinance provided for the application of " dust-down " and of limestone or fertilizer and the filling of grass seed over the denuded area. Under the ordinance the removal of topsoil could only be done after the payment of certain fees and the obtaining of a certain permit from the town clerk for the removal of such topsoil; exceptions from such provisions of the ordinance were made in the event that the removal of topsoil was from one part to another part on the same premises and for the purpose of an accessory use or improvement or farming on such premises. The rules governing the granting of permits and the removal of the soil applied to the entire town. There were made rigid conditions in order to obtain for the town the benefits of the ordinance. Claim in reference to such provisions is made by the plaintiffs to the effect that the enforcement of them would make unduly expensive the work of removing topsoil and unduly raise its price to the market. From the testimony before me as to the nature of the topsoil business I do not believe that the provisions for fees and permits is unreasonable. Argument is made that the ordinance is unreasonable in that it either deprives the plaintiffs of the entire use of their property or restricts the use in such a way that it deprives them of valuable rights in the property without any recourse for such deprivation. " It is well settled that an owner of property has the right to the use of his property without interference by a governmental unit unless the use affects the social, moral, physical and economical condition of the public in general, in which event the interference should only be in the form and to the extent rendered reasonably necessary to protect the public." (*Lizza & Sons* v. *Town of Hempstead*, 175 Misc. 383, 384; see same 69 N. Y. S. 2d 296, affd. 272 App. Div. 921.) However, if such use interferes with the social, moral, physical and economical welfare of the public then to forbid such interference is permissible for the public good. In adopting the ordinance for the public welfare and public good it is not unreasonable to deprive the owner of the property from certain uses of his property which may be more to his financial benefit than other uses; he may not be deprived of total use of his property and thus have his property made worthless but if the property is capable of use in a manner that it is not detrimental to the public welfare then he may be when necessary confined to such use as will not interfere with the public good. The proof before me establishes

to my satisfaction that, although at times there may be interference from flood waters, the property of the plaintiffs if properly graded can be used for agricultural purposes or for building purposes, and the proof further shows that in the vicinity of the plaintiffs' property there is a demand for these two such purposes.

From the testimony I find that the ordinance adopted on June 28, 1948, in reference to the removal of topsoil is not arbitrary or unreasonable and that it is distinctly for the public good of the town and its inhabitants. The testimony establishes that the removal of topsoil in this vicinity creates erosion, interferes with the stream of the creek, does away with animal and vegetable life and at times creates dust that is unhealthy. The Federal Government in the vicinity of the town of Cheektowaga is working on stream protection; such protection as planned is for the benefit of the town and its people and in a larger sense for the benefit of the inhabitants of western New York; interference with such plan of stream protection would be detrimental to this project of the Federal Government. For these reasons it must be concluded that the ordinance itself is one that is intended for and will protect the welfare of the community both from the standpoint of economy and of health. For these reasons the ordinance as adopted on June 28, 1948, is held to be constitutional and not invalid.

Reference has been made to the resolutions adopted by the town board under date of October 6, 1948, exempting the property of the plaintiffs and of another owner from the provisions of the ordinance on the ground that the use of these properties for topsoil stripping '' does not threaten to be detrimental to the public health, morals or safety or the general welfare in any respect.'' What the town board did when they adopted these two resolutions of exemption was to pass them for the reasons therein stated as an amendment to the ordinance of June 28, 1948. This being so the plaintiffs had a right under such amended ordinance or resolution to proceed with stripping the topsoil off the premises that they then occupied for that purpose. Owners similarly situated, if there be any, would be entitled to a similar exemption. The later resolution of May 9, 1949, which purported to rescind the resolution of October 6, 1948, was passed without notice and not in the manner which would give it the effect of a subsequent amendment to the original ordinance; I therefore hold that the resolution of May 9, 1949, in reference to the property of the plaintiffs is invalid.

From the foregoing it is established that the ordinance of June 28, 1948, and its subsequent amendment by the resolution of October 6, 1948, are valid.

This may be regarded as my decision in this action and the issues therein. On such decision may be entered judgment holding the ordinance as passed June 28, 1948, and as amended October 6, 1948, to be constitutional and enforcible and granting the plaintiffs an order restraining the defendant and its officers from interfering with the removal of the remaining topsoil on the premises now owned and being worked by the plaintiffs. Judgment to be without costs.