Miesz, Appellant, *v.* Village of Mayfield Heights et al., Appellees.

(No. 22388—Decided June 2, 1952.)

*Mr. Frank Leonetti,* for appellant.
*Messrs. Squire, Sanders & Dempsey,* for appellees.

Hurd, J. This case has significance for other than the immediate parties, because it involves the consti-

tutionality of a zoning ordinance regulating the stripping and removal of loam or topsoil from land within residential and other higher use districts; a question not heretofore considered by Ohio courts. The parties will be designated as plaintiff and defendant, as they appeared in the trial court.

The plaintiff, Miesz, is in the business of general excavating and grading and is also a dealer in topsoil and humus. In May 1950 he purchased 100 acres of land located in the U-1 or single residence use district in the defendant village of Mayfield Heights, a suburb of metropolitan Cleveland. Some time after the purchase of this land he commenced operations for the stripping and removal of loam and topsoil for commercial purposes. In the meantime, the council of the village on July 19, 1950, enacted an amendment to its original zoning ordinance No. 398, by the terms of which it prohibited absolutely the stripping, removal and hauling of topsoil from land classified under the higher use areas of the village. Thereupon, Miesz brought this action in equity in the Common Pleas Court of Cuyahoga County to restrain the village and its officers from interfering with his operations, claiming that the zoning ordinance prohibiting such removal was arbitrary and unreasonable and, therefore, unconstitutional.

Thereafter, while this suit was pending, the village council repealed the ordinance prohibiting the removal of topsoil and adopted in lieu thereof an amendment, under date of December 6, 1950, designed to regulate the removal of loam or topsoil from premises located in the higher use districts designated in the original zoning ordinance. Thereupon, an amended and supplemental petition was filed by plaintiff, praying for an injunction and equitable relief, in which it was alleged that the amended ordinance providing for regu-

lation rather than prohibition was likewise invalid because unconstitutional as applied to his land.

Defendants filed answers to the amended and supplemental petition, and the issue was joined on the validity of the ordinance as amended.

When the case came on for trial in Common Pleas Court, the court made a finding that the ordinance in question was a valid exercise of the police power and was reasonable and necessary for the preservation and promotion of the public health, safety and welfare of the village.

Thereupon, the plaintiff appealed to this court on questions of law and fact. After the case was docketed here, the plaintiff applied to the proper officers of the village for two permits to remove topsoil from his premises, in accordance with the conditions of the newly enacted ordinance. One application, dated August 1, 1951, was for the removal of topsoil from five acres of land for which a performance bond in the sum of $2,500 was posted; the second, dated September 26, 1951, was for the removal of topsoil from a second parcel of five acres for which a performance bond was posted in the sum of $500. The permits were granted, and, thereafter, the plaintiff proceeded to conduct operations in accordance with the provisions of the amended ordinance. In view of this fact, the defendants moved to dismiss this appeal as moot. We overruled the motion on the ground that by compliance the plaintiff did not necessarily waive his right to contest the constitutionality of the ordinance. The cause is now before us for trial *de novo* upon the record made in the court below.

The preamble to the ordinance sets forth the purposes thereof as follows:

"Whereas, the removal of all topsoil or loam from land involves noise and dust in the removal thereof

and results in blighted, unsightly areas unfit for use thereby retarding development as useful districts and creating drainage problems, swamp conditions and similar dangers to public health and safety and,

"Whereas, the removal, stripping and hauling is prohibited by provisions enacted in ordinance No. 1950 and,

"Whereas, the council desires to regulate the removal of said loam or topsoil so as to prevent the unsightly waste and other undesirable results, without, however, depriving the owner of the land of his rightful use thereof." (End of preamble.)

By the terms of the ordinance, it is provided in substance that it shall be unlawful for any person, firm or corporation to strip and remove any loam or topsoil from the land area located in U-1, single-family dwelling; (2) two-family house; (3) apartment house; or (4) local retail and wholesale use districts in the village, unless in conformance with a permit to do so, issued in pursuance to the provisions of the ordinance. The ordinance provides further that any person. desiring to remove loam or topsoil is obliged to file with the building inspector a written application containing information as to the name and address of the applicant, a description of the land from which topsoil is to be removed, specifying the area involved, the method of stripping and removal to be employed, the time within which the work is to be commenced or completed, the type of reseeding or replanting proposed, the depth of the loam or topsoil on the property, the amount proposed to be used during the operation and after its completion, the topography of the land, the ultimate proposed use of the land, and a statement that applicant will bear the expense of a village inspection during the operation under permit and will furnish a performance bond in the sum of $500

for each acre or fraction thereof included in the permit. The ordinance then provides, in substance, that the building inspector shall investigate the statements contained in the application and shall report the application and his findings thereon to the board of zoning appeals, which shall set a date for hearing upon the application.

It is provided further that if, after a hearing, the board of zoning appeals determines that the granting of the application will not adversely affect the public welfare, health, safety and convenience, it shall grant the application with such conditions relating to the method of stripping and removing, the term of the permit, the amount of topsoil and loam to be left on the land, which shall not be less than three inches, the reseeding or replanting, the drainage or topography, and such other conditions as the board may deem necessary for the protection of the public health, safety and welfare, and that such conditions shall be made a part of the permit and constitute limitations thereon.

The ordinance provides also that in the event the board of zoning appeals denies the application, the applicant may appeal to the council of the village within 30 days and the council by majority vote may act on such application, subject to the limitations set forth in the ordinance. It is then provided that upon granting the application, the building inspector shall be instructed to issue the permit containing the conditions imposed upon it, if any, by the granting body, and that such permit shall be isued to the applicant upon the posting of a bond running to the village, conditioned upon the performance of the permit in accordance with its terms and that the bond shall be signed by the applicant and a surety company or two good and sufficient sureties satisfactory to the mayor of the village in the amount provided by the ordinance. Section two

of the amended ordinance specifically repeals ordinance No. 1950, which, by its terms, prohibited the removal of topsoil.

Plaintiff in his brief asserts:

"It is therefore the plaintiff's contention that the ordinance is void and unconstitutional, first, because it places an undue restraint upon the use of plaintiff's premises; second, that there is no connection between the health, safety and welfare of the community and the ordinance; third, that the ordinance places an onerous burden upon the owner of the premises,—by requiring that he pay for the inspection service and furnish a bond in excess of $50,000, the conditions of which bond no one knows, and, fourth, that the ordinance is discriminatory in that it prevents the removal of topsoil from plaintiff's premises while not preventing the removal of houses and other structures that others may have upon their premises and in requiring plaintiff to furnish a bond to guarantee the stripping operation in accordance with the ordinance, when said village does not require one about to construct a house upon land to furnish a bond that the house will be built in accordance with the plans and specifications submitted for the granting of a permit."

In considering these contentions, a preliminary question to be determined is whether the regulation of the uses of vacant lands, including the stripping and removal of topsoil therefrom, falls within the scope of the zoning powers of municipalities under the Ohio Constitution and the laws enacted thereunder.

Any plan or regulation of zoning in Ohio must derive its authority from Section 3, Article XVIII of the Constitution of Ohio, which provides as follows:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and en-

force within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.''

This provision of the Constitution is implemented by Sections 4366-1 to 4366-12*a*, both inclusive, General Code.

Inasmuch as the ordinance under discussion involves limitations and regulations of the use of vacant land, we look to the pertinent provisions of Section 4366-8, General Code. In this statute express authority is granted whereby the ''council or other legislative body, in the interest of the promotion of the public health, safety, convenience, comfort, prosperity or general welfare, *may regulate and restrict* the location of buildings and other structures *and of premises to be used for trade, industry, residence or other specified uses, and for said purposes* divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this section. For each of such districts *regulations may be imposed designating* the kinds or class of trades, industries, residences or other purposes *for which* buildings or other structures *or premises may be* permitted to be erected, altered *or used subject to special regulations.*'' (Emphasis added.)

It is clear from a consideration of this section and cognate sections of the Code that the Legislature intended municipalities to have the power and authority to regulate the uses of premises, such as vacant land, within the use areas or districts designated by the council or other legislative body. *Pritz* v. *Messer* (1925), 112 Ohio St., 628, 149 N. E., 30.

It follows, therefore, that regulation of the use of vacant land falls within the scope of the zoning powers of municipalities under the Ohio Constitution and laws enacted thereunder, and that such regulation extends to the stripping and removal of topsoil.

We come now to consider whether the amendment to the zoning ordinance of the village of Mayfield Heights is invalid and unconstitutional with regard to the provisions regulating the removal of loam and topsoil from vacant land. This requires consideration of the contentions of plaintiff that there is no connection between the health, safety and welfare of the community and the ordinance, and that the ordinance places an undue and onerous burden upon him as owner of the premises in the respects claimed. In determining these questions it is necessary to consider whether the ordinance is a reasonable regulation of the use of the property in the public interest or an unreasonable interference with the rights of private ownership.

Upon the threshold of these considerations, certain well established legal principles must be conceded. In considering zoning ordinances, the presumption of validity which applies to legislative acts in general applies with equal force to zoning ordinances until the contrary is shown, and if the question is fairly debatable, the legislative judgment must be allowed to control. All zoning laws and regulations must find their justification in some aspect of the public welfare. Before a court will declare a zoning ordinance invalid, it must clearly appear that it has no substantial relation to the public health, safety, morals or the general welfare. Conversely, a zoning ordinance will be declared to be invalid where it clearly appears that it has no relation to such considerations. Courts will not substitute their judgment for the will of the legislative body, nor will judicial tribunals attempt to consider the wisdom of such legislation. If the legislation bears a real and substantial relation to the public health, morals, safety or general welfare, it will not be nullified by the judicial process. Whether the pow-

er exists to limit or regulate a particular use is to be determined, not by abstract considerations, but by considering it in connection with the facts and circumstances of each particular case.

*Village of Euclid* v. *Ambler Realty Co.* (1926), 272 U. S., 365, 71 L. Ed., 303, 47 S. Ct., 114, 54 A. L. R., 1016; *Beery* v. *Houghton, Inspector of Bldgs.* (1926), 273 U. S., 671, 71 L. Ed., 832, 47 S. Ct., 474; *Zahn* v. *Board of Public Works* (1927), 274 U. S., 325, 71 L. Ed., 1074, 47 S. Ct., 594; *Gorieb* v. *Fox* (1927), 274 U. S., 603, 71 L. Ed., 1228, 47 S. Ct., 675, 53 A. L. R., 1210; *Nectow* v. *City of Cambridge* (1928), 277 U. S., 183, 72 L. Ed., 842, 48 S. Ct., 447; *Pritz* v. *Messer, supra; City of Youngstown* v. *Kahn Bros. Building Co.* (1925), 112 Ohio St., 654, 148 N. E., 842, 43 A. L. R., 662; *State, ex rel. City Ice & Fuel Co.,* v. *Stegner, Dir.* (1929), 120 Ohio St., 418, 166 N. E., 226, 64 A. L. R., 916; *State, ex rel. Clifton-Highland Co.,* v. *City of Lakewood* (1931), 124 Ohio St., 399, 178 N. E., 837 (Certiorari denied, 285 U. S., 549, 76 L. Ed., 940, 52 S. Ct., 406); *State, ex rel. Synod of Ohio of United Lutheran Church,* v. *Joseph* (1942), 139 Ohio St., 229, 39 N. E. (2d), 515, 138 A. L. R., 1274; *State, ex rel. Cook,* v. *Turgeon, Bldg. Commr.,* 84 Ohio App., 287, 77 N. E. (2d), 283; *Criterion Service, Inc.,* v. *City of East Cleveland,* 55 Ohio Law Abs., 90, 88 N. E. (2d), 300 (Appeal dismissed, 152 Ohio St., 416, 89 N. E. [2d], 475).

Applying these principles of law to the facts of this case, we are of the opinion that the ordinance is a valid and constitutional regulation of the use of plaintiff's land. In arriving at this conclusion, we are of the opinion that the plaintiff has not clearly established that the provisions of the ordinance as applied to this property are unreasonable, arbitrary or capricious, or that they have no relation to the public

health, safety, morals or the general welfare. On the contrary, while there is some conflict in the expert testimony as to the effect of the removal of topsoil from the surface of vacant land, the evidence preponderates in favor of the village. The village produced evidence showing that topsoil supports desirable vegetation, which holds water and prevents erosion by upholding the surface of the ground, and that such topsoil must be present in every area in which desirable vegetation is grown and particularly in residential areas.

The deputy commissioner of health for Cuyahoga county gave credible evidence showing that stripping and removing topsoil to the so-called "hard pan" will alter the drainage pattern of the área in question; and that in level areas such removal normally creates pools of water which become stagnant, producing unhealthy conditions which impose an added burden on the health facilities of the community. In sloping areas, the removal of topsoil does away with protective surface which would otherwise prevent erosion, and this results in "gullying" and a quick runoff of surface water which overtaxes the natural drainage facilities.

The defendant produced evidence showing also, *inter alia*, that areas without vegetation or upon which weeds and field grass grow will be useless until topsoil is brought in or some effort is made to rehabilitate the stripped areas; that such areas become economically blighted with less chance for development as residential areas; that landscape gardeners who engage in large scale topsoil operations generally do little or nothing to correct the conditions produced by these operations; that they strip the soil and leave the denuded land; that in Mayfield Heights there are approximately 2000 acres subject to stripping and removal; and that the village is charged by law with alleviat-

ing nuisances, providing proper drainage and promoting the public health, safety and welfare.

While plaintiff testified that eventually he intended to allot the land owned by him by constructing streets and installing sewers and in support of this testimony introduced in evidence plats of the proposed allotment, it is obvious that the stripping and removal of the topsoil from the 100 acres is an operation which plaintiff intends shall precede the alloting program. We think it is a reasonable exercise of the police power on the part of the village to regulate such operation by ordinance.

The plaintiff's contention that the ordinance is unduly burdensome because of the requirement that he furnish bond, as he states, in the sum of $50,000, is not tenable. In our opinion it will not be necessary to place a bond in such a large amount inasmuch as plaintiff will be operating on various parcels at various times. This is indicated by the permits under which plaintiff is now working, the first permit being for five acres under which he posted a bond of $2,500, and the other permit for an additional five acres under which he posted a bond for only $500. Judging by performance, which is the best test, his bond at any time will not be required to be over $3,000. He contends also that the ordinance is burdensome because he is required to pay for inspection services. There is no evidence in the record indicating the cost of such services, and in the absence of such evidence, we cannot hold that an inspection fee per se is unreasonable; particularly when he is not required to pay for a permit in the first instance as required in other jurisdictions. We think the contention that the ordinance is discriminatory in comparison with the provisions for the removal of houses and other structures and in the contention that the village "does not require one about

to construct a house upon land to furnish a bond that the house will be built in accordance with plans and specifications'' is entirely without merit. We simply dismiss this contention because, at best, it does not set forth any fair basis for comparison.

In our opinion the evidence adduced supports completely the reasons for and the purposes of the ordinance as expressed in the preamble which shows the desire of council to regulate the removal of loam and topsoil in order to prevent unsightly waste and other undesirable results without depriving the owner of the land of his rightful use thereof, and particularly to obviate the dangers to public health and safety.

In view of all the evidence, we think that the ordinance is definitely in the interest of the promotion of the public health, safety, convenience, prosperity and general welfare in a constitutional sense and in accord with the statutory law of the state.

While Ohio has not heretofore considered this subject, other states have upheld the validity of similar legislative enactments. The State of New York has a record of considerable legislation on this subject.

The case of *Lizza & Sons* v. *Town of Hempstead* (1946), 69 N. Y. Supp. (2d), 296, is in many respects analogous to the instant case. The facts in that case show that the three towns of Hempstead, North Hempstead and Oyster Bay in Nassau county adopted uniform ordinances regulating removal of topsoil in which it was required that applications for permits be accompanied by a plan prepared by a duly licensed engineer or land surveyor setting forth a three dimensional view of the extent of the proposed excavation, the existing conditions of the plot or premises before the work is completed, and the proposed condition of the plot or premises after completion of the work. The ordinances provided further that the ap-

plicant file with the clerk a certificate of the commissioner of public works of the county of Nassau showing that such excavation and finished grades of the property as shown on the map will not interfere with the comprehensive draining plan of the town in question; that six inches of topsoil be left on the surface, from which the topsoil is removed; that an application for certificate of completion shall be accompanied by a map drawn to scale showing a cross-section of the affected property, prepared by a duly licensed engineer or land surveyor after completion of the operations, who shall also certify that there is not less than six inches of topsoil remaining on the ground from which topsoil has been removed; and that the area has been seeded in compliance with the ordinance.

The Hempstead, North Hempstead and Oyster Bay ordinances provided further for a fee of approximately $365 for a permit to strip a four-acre plot, whereas a previous ordinance had provided for a fee of only $96 for a permit for a six-acre parcel. The ordinance further limited a permit to a four-acre parcel whereas an earlier ordinance had permitted the stripping of a six-acre parcel.

We think the ordinances of the three towns are in many respects more stringent than the ordinance here under consideration. The court held that the ordinances in question constituted a reasonable exercise of police power and that they were therefore constitutional. The judgments for defendants were affirmed on appeal. *Lizza & Sons* v. *Town of Hempstead* (1947), 272 App. Div., 921, 71 N. Y. Supp. (2d), 14.

To the same effect are the cases of *Burroughs Landscape Construction Co., Inc.,* v. *Town of Oyster Bay* (1946), 186 Misc., 930, 61 N. Y. Supp. (2d), 123; and *Schreiber* v. *Town of Cheektowaga* (1949), 195 Misc., 748, 91 N. Y. Supp. (2d), 403.

These cases are the latest pronouncement in the state of New York and represent the modern view in respect of the exercise of police powers of municipalities in regulating uses of property under zoning laws and ordinances, modifying and in some respects overruling earlier cases in that state.

In Massachusetts, we find the case of *Town of Burlington* v. *Dunn* (1945), 318 Mass., 216, 61 N. E. (2d), 243, 168 A. L. R., 1181 (Certiorari denied, 326 U. S., 739, 90 L. Ed., 441, 66 S. Ct., 51), which, while it involved the proposition of an absolute prohibition of the stripping and carrying away of loam and topsoil of the land in a residence district, is cogent in reasoning as applied to an ordinance which provides for regulation only. The court there held that a provision of the zoning bylaw of Burlington, a small residential town near the city of Boston, forbidding the use of land in a residential district for the purpose of stripping and carrying away the topsoil was not unreasonable or unconstitutional as applied to two tracts of land in the residential district aggregating about 45 acres and within one-half mile of a number of residences.

At page 221, the court, speaking through Qua, J., says:

''In our opinion the bylaw is a valid constitutional regulation of the defendants' use of their land. We may take judicial notice of the fact that Burlington' is a small town, generally residential in character, located within commuting distance of Boston. There are approximately fifty residences within a radius of half a mile from the premises. The defendants have commenced to remove the soil by scraping it into piles with a 'bulldozer' and taking it away by means of a steam shovel and trucks. The stripping of the top soil from a tract of land is not only likely to produce

disagreeable dust and noise during the process, which may be prolonged, but, more important, after it is completed it leaves a desert area in which for a long period of time little or nothing will grow except weeds and brush. It permanently destroys the soil for agricultural use and commonly leaves the land almost valueless for any purpose. The effect of such an unsightly waste in a residential community can hardly be otherwise than permanently to depress values of other lands in the neighborhood and to render them less desirable for homes. If this process should be repeated upon tract after tract of suburban land the cumulative effect might well become disastrous to certain localities. The town must continue to maintain roads and public services past such blighted areas in spite of the fact that taxable values are destroyed and development retarded. All this concerns the public welfare in the constitutional sense. *Wilbur* v. *Newton*, 302 Mass., 38, 42-43. It is natural that a town of the character and situation of Burlington should endeavor to protect itself against such consequences."

It is interesting to note that the Massachusetts court took judicial notice of some matters which are in evidence in this case.

The plaintiff, in support of his contentions, has cited the cases of *People* v. *Hawley* (1929), 207 Cal., 395, 279 P., 136; *Village of Terrace Park* v. *Errett* (C. C. A., 6, 1926), 12 F. (2d), 240 (Certiorari denied, 273 U. S., 710, 71 L. Ed., 852, 47 S. Ct., 100); *City of Pittsfield* v. *Oleksak* (1943), 313 Mass., 553, 47 N. E. (2d), 930; *Bartsch* v. *Ragonetti* (1924), 123 Misc., 903, 207 N. Y. Supp., 142 (Affirmed without opinion, 214 App. Div., 799, 210 N. Y. Supp., 825); *Town of Harrison* v. *Sunny Ridge Builders, Inc.*, 169 Misc., 471, 7 N. Y. Supp. (2d), 521; *People* v. *Calvar Corporation* (1941), 286 N. Y., 419, 36 N. E. (2d), 644, 136 A. L. R., 1376;

*People* v. *Linabury* (1924), 209 N. Y. Supp., 126; *Lizza & Sons, Inc.,* v. *Town of Hempstead* (1940), 175 Misc., 383, 23 N. Y. Supp. (2d), 811; *Mercer Lumber Companies* v. *Village of Glencoe,* 390 Ill., 138, 60 N. E. (2d), 913; *De Felice* v. *Zoning Board of Appeals of East Haven,* 130 Conn., 156, 32 A. (2d), 635, 147 A. L. R., 161.

We have examined these cases and find that in most instances the questions of absolute prohibition are presented in respect of the removal of valuable materials from land such as rock, sand, gravel, timber, etc., rather than questions of regulation. The early cases which declared invalid bylaws and ordinances concerning the removal of topsoil and other materials whether by prohibition or regulation have since been rendered of little or no effect by reason of later legislative enactments or by judicial decisions overruling or modifying the earlier pronouncements.

It would serve no good purpose to extend this opinion further with a discussion of cases which have little or no analogy to the issues of the instant case, or are so early in point of time as to be neither authoritative nor persuasive in relation to Ohio law.

We conclude, therefore, that the ordinance in question is a valid and constitutional exercise of the police power, having a reasonable relation to the health, safety, convenience, prosperity and welfare of the village, and that a decree should accordingly be entered for the defendants.

*Judgment for defendants.*

SKEEL, P. J., and THOMPSON, J., concur.