CITY OF TOLEDO, APPELLEE, *v.* MILLER, APPELLANT.

(No. 5030—Decided November 18, 1957.)

*Mr. Nicholas J. Walinski,* for appellee.
*Mr. Morris Lubitsky,* for appellant.

FESS, J. This case is here on appeal on questions of law from a judgment of the Municipal Court of Toledo, Ohio, finding defendant guilty of a violation of Section 9-2-6 (20) of the Toledo Municipal Code and imposing a fine of $50 and costs.

On October 10, 1956, an ordinance became effective amending Section 9-2-6 of the Zoning Ordinance dealing with "C" Commercial District, providing that "No building or part thereof designed primarily for commercial use shall be used as living quarters."

The premises which had been occupied as living quarters

by the defendant and his family for some two years at the time of trial are located in zone D, Light Industrial District.

Section 9-2-7, dealing with zone D, provides in part:

"In the 'D' Light Industrial District all buildings and premises except as otherwise provided in this chapter may be used for any use permitted in the 'C' Commercial District or for any other use except the following:"

Subsection 71 of Section 9-2-7, provides:

"No dwelling or structure used primarily for human habitation or care, including schools, hospitals or other institutions shall be erected, or structurally altered, for permanent dwelling purposes, unless accessory and incidental to a permitted principal use. The zoning classification of property must be incorporated in instruments offering to sell or lease by real estate brokers, agents, owner or their representatives. All accessory and incidental uses shall be first approved by the Administrative Board. Said Administrative Board is hereby authorized and empowered in particular cases to permit residential use of land zoned 'D' Light Industrial Districts notwithstanding the provision hereof."

It is the contention of the city that the residential use in zone "D" is prohibited by subparagraph 20 of Section 9-2-6 under the foregoing first paragraph of Section 9-2-7.

The evidence discloses that the storeroom was a restaurant before its occupancy by the defendant some time prior to the adoption of the ordinance. The room is 21 feet wide and 90 feet deep. Since the evidence fails to disclose that any business is conducted on the premises, it is to be inferred that the room is occupied solely as the residence of the defendant and his family, consisting of his wife and unmarried daughter. The living room, bed room and combination kitchen and dinette are separated either by partitions or hanging drapes. A lavatory and toilet are installed in the rear, and a shower in the basement. Photographs of the interior disclose rather cozy but not unattractive furnishings. No evidence was introduced tending to show unsanitary or unhealthy conditions, the prosecution apparently relying merely upon proof of its use as living quarters.

In general, the Toledo Zoning Code follows the normal pattern of prohibiting uses of premises which are less desirable

than the use for which the area in which the premises are located is zoned, but, with the exception of subparagraphs 9-2-6 (20) and 9-2-7 (71), does not prohibit more desirable uses in the lower area.[1] In other words, the scheme employed generally operates "down" rather than "up."

Zoning regulations find their justification in the exercise of the police power in the interest of the public health, safety and morals. *Pritz* v. *Messer,* 112 Ohio St., 628, 149 N. E., 30; *State, ex rel. Cook,* v. *Turgeon, Bldg. Commr.,* 84 Ohio App., 287, 77 N. E. (2d), 283. But it is well settled that the power can not be exercised in an arbitrary or unreasonable manner. *City of Youngstown* v. *Kahn Bros. Bldg. Co.,* 112 Ohio St., 654, 148 N. E., 842, 43 A. L. R., 662; *State, ex rel. Synod of Ohio of United Lutheran Church,* v. *Joseph et al., Comm.,* 139 Ohio St., 229, 39 N. E. (2d), 515, 138 A. L. R., 1274; *Cassell* v. *Lexington Twp. Bd. of Zoning Appeals,* 163 Ohio St., 340, 127 N. E. (2d), 11. And a zoning regulation which bears no substantial relation to the public health, safety, morals or general welfare, thus amounting to an unreasonable or arbitrary interference with the right of enjoyment of private property, is constitutionally invalid. *State, ex rel.,* v. *Joseph, supra.*

Before a court may declare a zoning ordinance invalid, it must clearly appear that it has no substantial relation to the public health, safety, or morals, or to the general welfare. But the converse is equally true, that a zoning regulation will be declared invalid where it has no relation to the exercise of the police power. Cf. 42 Ohio Jurisprudence, 812, Section 13; *State, ex rel. Cook,* v. *Turgeon, supra.* It is conceivable that under particular circumstances, the necessity might arise for zoning to prevent residential use of property in an industrial district, where the nature of the industry in the district is such as to make residence in close proximity thereto dangerous to the health or safety of residents. But the Toledo Zoning Ordinance deals primarily with the types of structure to be erected in the several districts and the use to which such structures shall be

[1]The districts prescribed are:

"A" Residence; "A-1" Residence; "AA" One-family Residence; "B" Residence; "C" Commercial; "D" Light Industrial; and "E" Heavy Industrial.

devoted for the protection of the health, safety and convenience of the residents of the commuunity.[2] The subparagraph under which the proceeding was brought deals with private occupancy of premises in a light industrial district.

Since there was an existing nonconforming use of the premises by the defendant prior to the adoption of the amendment to the ordinance, it can not be enforced against such defendant. It is therefore unnecessary for us to determine in this proceeding generally the constitutionality of the amendment itself. Cf. *Mehl* v. *Stegner, Dir.*, 38 Ohio App., 416, 175 N. E., 712.

The judgment of the Municipal Court is reversed and defendant discharged.

*Judgment reversed.*

DEEDS and SMITH, JJ., concur.

[2]The city is divided into "Use Districts" in order to regulate and restrict the location of trades and industries and the location of buildings erected or altered for specified purposes. Except as therein otherwise provided, no building shall be erected or structurally altered, nor shall any building or premises be used for any purpose other than is permitted in the Use District in which such building or premises is located. Section 9-2-1.